NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 12a0300n.06

No. 10-1067

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Mar 16, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| JOSEPH COSTA PACHECO, III, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  CLAY, GIBBONS, and WHITE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Joseph Costa Pacheco, III was convicted of five counts of bank robbery, in violation of 18 U.S.C. § 2113(a).  Pacheco appeals his conviction, arguing that the district court erred in denying his request for additional investigative funds and his request for a thirty-day continuance to allow his investigator to interview additional witnesses.  Pacheco further argues that the government presented insufficient evidence that the deposits of the banks he robbed were FDIC-insured.

Pacheco also appeals his sentence.  He argues that the district court erred when it declined to grant a two-level downward adjustment of his offense level for acceptance of responsibility.  He further claims that his sentence was procedurally unreasonable because the district court failed to consider his argument that his criminal history was overrepresented.

For the reasons that follow, we affirm Pacheco's conviction and sentence.

I.

Between October 15, 2007 and October 29, 2007, Pacheco robbed five banks in eastern Michigan. His *modus operandi* was similar for each robbery: Near closing time, Pacheco entered the front door of the bank branch, waited in line, and when called to the teller window, placed a brown paper bag on the counter in front of the teller. The bag had writing on it that informed the teller "this is a robbery." The writing on the bag also directed the teller to put all of his or her money in the bag. Each teller complied with the demand, and Pacheco then left the bank, through the front door, with the money. He did not brandish a weapon during any of the robberies.

Pacheco was arrested on October 30, 2007 and admitted to the police that he had robbed each of the five banks. A grand jury returned an indictment charging Pacheco with five counts of bank robbery in violation of 18 U.S.C. § 2113(a).

Pacheco represented himself *pro se* in district court proceedings, with the assistance of stand-by counsel. On February 9, 2009, Pacheco moved to obtain an investigator and for a ninety-day continuance of his trial, which was then scheduled to begin on February 24, 2009. The district court continued the trial, authorized the appointment of an investigator, and authorized the payment $1,000 for investigative services. On July 16, 2009, the court authorized an additional $600 in funds for investigative services.

Pacheco's jury trial began on September 14, 2009. That morning, Pacheco requested a thirty-day continuance of the trial to allow his private investigator to attempt to contact twenty additional prospective witnesses. He also requested an additional $200 for investigative

2

services.  Pacheco argued that the government had delayed in providing his investigator with the home phone numbers of certain witnesses, causing her to unnecessarily expend 1 1/2 hours obtaining this information.  Pacheco also argued that a continuance was necessary because he had not yet been able to review the videos of his police interrogation and the surveillance videos of the robberies.

The government objected to the continuance, arguing that the investigator had been provided with the names and home phone numbers of witnesses at least one month prior to the first day of trial, affording her ample time to conduct her investigation.  The government further argued that Pacheco could have subpoenaed witnesses with the assistance of the United States Marshal Service but had not done so.

The district court ruled that there was no impediment to proceeding with *voir dire* and told Pacheco that he would be given an opportunity to review the surveillance and interrogation videos after *voir dire* was completed.  The court conducted *voir dire*, empaneled a jury, and sent the jury home for the day.  Pacheco was then given an opportunity to review the surveillance and interrogation videos.  Trial proceeded the next morning as scheduled.

At trial, the government called the five bank tellers from whom Pacheco had demanded money and played the surveillance video from each robbery.  Each teller identified Pacheco as the robber in still photos or videos of the robberies and also identified Pacheco when testifying during trial.  All of the tellers also testified that they had been trained by the bank to comply with notes that demanded money.  However, four of the five tellers testified that they gave Pacheco money because he demanded it, not because bank policy directed them to do so.

3

The government also elicited testimony from Joseph Herrera, a bank examiner with the Federal Deposit Insurance Corporation ("FDIC"). Herrera testified that the FDIC insured the deposits of member banks and deposits made at each of their domestic branches. He testified that he had reviewed the FDIC's insurance records and had confirmed that the deposits of each of the five banks that had been robbed were presently insured by the FDIC, and had been insured in October 2007, when the banks were robbed.

Pacheco testified in his own defense. He acknowledged that he had robbed each of the five branches but claimed that he did not intend to intimidate anyone during the course of the robberies. He testified that he never threatened the tellers involved in the robberies with harm if they failed to comply with his demands for money.

Pacheco also sought to elicit the testimony of Harsha Shah, a witness to one of the bank robberies. Shah was unavailable to testify, and Pacheco agreed that the following stipulation would be read to the jury in lieu of her testimony:

> One, that the dates listed in the indictment are true and correct dates for each incident; and two, an employee of the Charter One bank in Farmington Harsha Shah was present on October 23, 2007. She told investigators that after the suspect left the bank, she went out the door to see if a vehicle was involved, and saw the suspect walk east on the north sidewalk of Slocomb to the east lot of the Orchard condominiums and north toward Orchard where the site [*sic*] line was lost.

Pacheco specifically advised the district court that this stipulation would allay his concern about the inability of Shah to testify in his defense.

The jury returned a verdict of guilty as to each count of the indictment. Prior to sentencing, the district court reviewed sentencing memoranda submitted by Pacheco and the government, a Pre-Sentence Investigation Report, multiple victim impact statements, and two

4

letters submitted in support of Pacheco.  In his memorandum and again at the sentencing hearing, Pacheco argued that he was entitled to a two-level downward adjustment on the basis of his acceptance of responsibility for his criminal conduct.  He also argued that a criminal history category of VI overrepresented his past criminal conduct.

The district court concluded that the combined adjusted offense level for the five robbery convictions was 26 and Pacheco's criminal history category was VI.  Accordingly, the court determined the advisory Guidelines range was 120 to 150 months of imprisonment.

The court considered but rejected Pacheco's argument that he was entitled to a two-level adjustment based on his acceptance of responsibility.  During the sentencing hearing, the court also acknowledged that Pacheco sought a departure based upon the overrepresentation of his criminal history, but did not grant a departure.  After assessing the relevant factors under 18 U.S.C. § 3553, the court imposed a sentence of 120 months of imprisonment.

## II.

Pacheco raises three arguments in support of his claim that his conviction must be reversed.  He first argues that the district court erred in denying his request to authorize additional funds for investigative services, a request he made on the morning his trial began.  Second, Pacheco contends that the district court erred in declining to grant his request for a thirty-day continuance of his trial to allow his investigator to interview twenty additional witnesses to the bank robberies.  Finally, Pacheco argues that the government presented insufficient evidence that the deposits of the banks he robbed were FDIC-insured.  We address each argument in turn.

## A.

We review the district court's denial of an indigent defendant's request for authorization for investigative services under 18 U.S.C. § 3006A for an abuse of discretion. *United States v. Gilmore*, 282 F.3d 398, 406 (6th Cir. 2002).

Pursuant to 18 U.S.C. § 3006A(e)(1),[1] a district court has the authority to authorize payment for investigative services for an indigent defendant. An indigent defendant may obtain authorization for investigative services "upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *Gilmore*, 282 F.3d at 406. However, "[a] district court need not grant an indigent's motion under § 3006A on the off chance that the requested services might turn up something." *Id.*

The district court did not abuse its discretion in denying Pacheco's motion for additional investigative funds because Pacheco was able to mount a plausible defense without additional investigative services. Pacheco's defense theory was that he could not be convicted of bank robbery under 18 U.S.C. § 2113(a), which prohibits bank robbery through use of "force and violence, or by intimidation," because he did not use intimidation to facilitate the robberies. *See* 18 U.S.C. § 2113(a). Pacheco testified at trial that his actions were not intended to intimidate the tellers, that the robberies were nonviolent, that he never brandished a weapon, and that he never threatened the tellers involved in the robberies with harm if they failed to comply with his

---

[1]This section provides: "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services." 18 U.S.C. § 3006A(e)(1).

6

demands for money. The jurors were shown surveillance video of each robbery and thus were presented with an objective representation of Pacheco's actions during the robberies. Finally, Pacheco requested that the jury be informed, through a stipulation, that Harsha Shah, a bank employee, followed him as he left one of the banks to watch where he was going. Pacheco sought the introduction of this evidence to show that his actions could not have been intimidating if, after he completed one of the robberies, an employee felt safe following him out of the building. Pacheco was able to—and did—mount a vigorous defense absent the authorization of additional investigative services.

There is also no evidence that Pacheco's defense was prejudiced by the district court's failure to authorize an additional $200 in investigative funds. In March of 2009, six months before trial, the court authorized $1,000 for investigative services. In July, the court authorized $600 of additional funds. Yet after a six-month investigation and the expenditure of $1,600, Pacheco's investigator had not identified a single witness to subpoena in support of Pacheco's defense that his actions did not constitute intimidation. There is simply no indication that any of the additional twenty witnesses his investigator wished to interview would have buttressed his defense, particularly because the jury heard the most probative testimony, the testimony of the tellers themselves. Pacheco's speculation that one of the additional witnesses might have seen his actions as non-threatening is insufficient to demonstrate that he was prejudiced by the court's refusal to authorize additional investigative services.

B.

Pacheco next contends that the trial court erred in denying his request for a thirty-day continuance of his trial. We review the district court's denial of a motion for continuance for an

abuse of discretion. *United States v. Warshak*, 631 F.3d 266, 298 (6th Cir. 2010). "Denial amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." *Id.* (citation and internal quotation marks omitted). "The defendant demonstrates actual prejudice by showing that a continuance would have made relevant witnesses available or added something to the defense." *Id.* (citation and internal quotation marks omitted).

Pacheco argues that the trial court's failure to grant his request for a thirty-day continuance pursuant to his oral motion, made on the morning his trial was scheduled to begin, impaired his ability to present a defense. Pacheco sought the continuance to allow his investigator to interview additional witnesses to the robberies. He speculated that these additional witnesses would support his defense that he did not use intimidation during the robberies by testifying that they did not notice that robberies were in progress or that the tellers reacted calmly during the robberies.

Pacheco cannot demonstrate that he was actually prejudiced by the district court's failure to grant him a thirty-day continuance. Pacheco could not articulate what evidence the additional potential witnesses would offer—he merely speculated that some would corroborate his theory that he did not act in an intimidating manner by testifying that they had not noticed that a robbery was taking place and that the tellers reacted calmly during the robberies. Even if certain witnesses testified that they had not noticed the robberies occurring, or that the tellers reacted calmly, this would hardly have shown that Pacheco's actions would not have caused "an ordinary person in the teller's position [to] reasonably infer a threat of bodily harm from the defendant's

8

acts." *See Gilmore*, 282 F.3d at 402. "A demand note itself, being a tool of the trade of bank robbers, is a form of intimidation." *United States v. Smith*, 1 F.3d 1243, 1993 WL 303359, at *1 (6th Cir. 1993) (table) (*per curiam*). Because such testimony would not have aided Pacheco's defense, he was not prejudiced by the district court's denial of his requested continuance. Accordingly, we conclude that the district court did not abuse its discretion in denying Pacheco's motion for a thirty-day continuance of his trial.

C.

Pacheco next contends that the evidence presented at trial was insufficient to support his convictions because the government failed to prove that the deposits of the banks he robbed were FDIC-insured. In reviewing the sufficiency of the evidence in support of a criminal conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 543 (6th Cir. 2011) (*en banc*) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original) (internal quotation marks omitted). Where, as here, the defendant did not move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, this court reviews the sufficiency of the evidence only for plain error resulting in a "manifest miscarriage of justice." *United States v. Frazier*, 595 F.3d 304, 306 (6th Cir. 2010). "A miscarriage of justice exists only if the record is devoid of evidence pointing to guilt." *United States v. Roberge*, 565 F.3d 1005, 1008 (6th Cir. 2009) (internal quotation marks omitted).

Pacheco argues that the government introduced insufficient evidence to prove that the deposits of the banks he robbed were FDIC-insured at the time of the robberies. Pacheco claims

9

that the FDIC insurance certificate from each bank was improperly introduced under Federal Rule of Evidence 803(6), because Joseph Herrera, a bank examiner with the FDIC, was not a "qualified witness" through which to introduce the FDIC certificates. Pacheco's argument is meritless.

In a bank robbery prosecution under 18 U.S.C. § 2113(a), the government must prove that the victim bank's deposits were insured by the FDIC at the time of the robbery in order to establish the jurisdictional element of the offense. *See United States v. Sandles*, 469 F.3d 508, 513 (6th Cir. 2006); *United States v. Wood*, 780 F.2d 555, 556 (6th Cir. 1986) (*per curiam*); *United States v. Rowan*, 518 F.2d 685, 692 (6th Cir. 1975).[2] Herrera, a bank examiner and ten-year veteran of the FDIC, testified that he had reviewed the FDIC's insurance records and confirmed that the deposits of each of the five banks that had been robbed were insured by the FDIC at the time of trial. Herrera also testified that the deposits of each bank had been insured in October 2007. Further, the government introduced into evidence the insurance certificates of each of the banks that was robbed.

Business records, such as FDIC insurance certificates, must be "presented through 'the testimony of a custodian or other qualified witness.'" *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (quoting Fed. R. Evid. 803(6)). "The phrase 'other qualified witness' is given a very broad interpretation." *United States v. Baker*, 458 F.3d 513, 518 (6th Cir. 2006) (internal quotation marks omitted). For an "other qualified witness" to lay the foundation for the

---

[2]Pursuant to 18 U.S.C. § 2113(a), a person may not "by force and violence, or by intimidation, take[], or attempt[] to take, from the person or presence of another, or obtain[] or attempt[] to obtain by extortion any property or money or any thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . ." Section 2113(f) defines the term "bank," in pertinent part, as "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 2113(f).

introduction of business records, he need not have personal knowledge of their preparation. *Id.* "All that is required of the witness is that he or she be familiar with the record-keeping procedures of the organization." *Id.* (internal quotation marks omitted.)

The introduction of FDIC certificates through Herrera was proper. It is apparent from the record that Herrera was familiar with the FDIC's record-keeping procedures. At the time of trial, Herrera had been employed by the FDIC for ten years and eight months. As part of his job duties as a bank examiner, he regularly accessed and examined FDIC business records. Herrera testified that the FDIC regularly kept records of bank insurance and that those records were made at or near the time the insurance became effective by a person with knowledge of the insurance maintained by the banks. Herrera also testified that a notation was made in the FDIC's electronic database if a member bank thereafter ceased to be insured by the FDIC. Herrera reviewed the FDIC records of each of the banks robbed prior to testifying and confirmed that each bank's deposits were insured at the time of the robberies in October 2007. Herrera also accessed the FDIC's electronic database on the morning before trial and confirmed that each bank's deposits were still FDIC-insured. Herrera was clearly a qualified witness through which to introduce FDIC insurance records. Accordingly, the government introduced sufficient evidence the banks robbed were FDIC-insured.[3]

---

[3]Pacheco also claims that even if the FDIC insurance certificates were properly introduced, the certificates did not prove that the deposits of the banks he robbed were insured at the time of the robberies, because the certificates pre-dated the October 2007 robberies. We have previously held that testimony that a bank was insured by the FDIC at the time of trial, coupled with an FDIC certificate of insurance that pre-dated the robbery, was sufficient to prove a bank's insured status at the time of the robbery. *See Rowan*, 518 F.2d at 693. Herrera's testimony that the banks were insured at the time of Pacheco's trial, coupled with the introduction of FDIC certificates that pre-dated the robberies, was sufficient under *Rowan* to prove the banks' deposits were FDIC-insured

III.

Having concluded that Pacheco's conviction must be affirmed, we now turn to Pacheco's challenges to his sentence.

A.

Pacheco first argues that the district court erred when it refused to grant him a two-level downward adjustment of his offense level for acceptance of responsibility. Pacheco's argument has two prongs. First, he claims that the district court improperly interpreted U.S.S.G. § 3E1.1 as prohibiting it from awarding acceptance of responsibility credit to a defendant who proceeded to trial instead of accepting a plea offer. Second, Pacheco claims that he was entitled to acceptance of responsibility credit because he never contested his factual guilt, but only challenged whether his actions constituted bank robbery through the use of intimidation.

Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . the determination of the sentencing judge is entitled to great deference on review." U.S.S.G § 3E1.1, cmt. n.5. "The defendant has the burden of demonstrating by a preponderance of the evidence that a reduction for acceptance of responsibility is warranted." *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001). "Because it [is] generally a question of fact, the trial court's determination of whether a defendant has accepted responsibility normally enjoys the protection of the clearly erroneous standard, and will not be overturned unless it is without foundation." *Id.* (citation and internal quotation marks

---

at the time of the robberies.

omitted). "Questions of law, however, such as the appropriate application of a guideline to a particular set of facts, are subject to de novo review." *Id.*

Contrary to Pacheco's assertion, the district court did not improperly interpret Section 3E1.1 of the Sentencing Guidelines as preventing it from awarding Pacheco acceptance of responsibility credit *solely* because he proceeded to trial. Section 3E1.1 provides for an offense level reduction of up to three points for a defendant's acceptance of responsibility as follows:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Application note 2 explains:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

In denying Pacheco's request for a reduction of his offense level based on acceptance of responsibility, the district court explained:

13

> The critical, the gist *and perhaps the most important aspect of accepting responsibility* is sparing the victims and the government, the task and ordeal of a trial process itself . . . [G]iven the choices that you made, [I] cannot find such acceptance of responsibility to give the reduction.

(R. 89, at 12) (emphasis added.)

By noting that the most important aspect of acceptance of responsibility is demonstrated by a defendant's decision to plead guilty, the district court acknowledged that it had the authority to grant acceptance of responsibility credit even if a defendant chose to proceed to trial instead of pleading guilty. The court referred to multiple choices Pacheco made, not merely his choice to proceed to trial, as its basis for declining to adjust Pacheco's offense level. The record thus reveals that the district court did not automatically deny Pacheco's requested reduction based on his failure to plead guilty.

Moreover, Pacheco was not entitled to a two-level adjustment for acceptance of responsibility because he contested his factual guilt at trial. Though Pacheco admitted that he was the perpetrator of the robberies, he claimed that he could not be convicted because he did not perpetrate the robberies through the use of intimidation. We have squarely rejected the argument that a bank robber is entitled to an acceptance of responsibility adjustment even though he claims he cannot be convicted under 18 U.S.C. § 2113(a) because he did not use intimidation to perpetrate the robbery. *See United States v. Morrison*, 10 F. App'x 275, 284–85 (6th Cir. 2001), *Smith*, 1993 WL 303359, at *1; *accord United States v. Mitchell*, 113 F.3d 1528, 1534 (10th Cir. 1997) (affirming denial of adjustment for acceptance of responsibility for bank robber who confessed to robbery but challenged intimidation element at trial), *abrogated on other grounds by United States v. Chambers*, 555 U.S. 122 (2009). He also contested that the banks were FDIC-

14

insured at the time they were robbed.  Because Pacheco challenged his factual guilt, the district court did not err in declining to apply an acceptance of responsibility adjustment under U.S.S.G. § 3E1.1.

B.

Pacheco also challenges the procedural reasonableness of his sentence, arguing that the district court failed to consider his argument that his criminal history was overrepresented before sentencing him to 120 months of imprisonment.  We review the reasonableness of a sentence imposed by the district court under an abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

A sentence is procedurally unreasonable if the district court improperly calculates the advisory Guidelines range, treats the Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. *United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008).  While a district court must state in open court the reasons for imposing a particular sentence, *United States v. Grams*, 566 F.3d 683, 686 (6th Cir. 2009) (*per curiam*), it need not "give the reasons for rejecting any and all arguments by the parties for alternative sentences."  *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (*en banc*).

Pacheco's argument fails because the record reveals that the district court considered and rejected Pacheco's argument that a criminal history category of VI overrepresented the severity of his past criminal conduct.  During the sentencing hearing, the court noted on three separate occasions that Pacheco sought a downward departure based on the overrepresentation of his

15

criminal history. The court asked Pacheco to explain why he sought a departure based on overrepresentation of his criminal history, and Pacheco responded that certain past convictions should not be counted because they were uncounseled or had been assigned too many points. After the court concluded that the appropriate amount of points had been assigned to each of Pacheco's prior convictions, Pacheco stated that he still wished to argue "overrepresentation of criminal history and 3553(a) factors." Pacheco then made an argument as to why the § 3553(a) factors justified a sentence of fewer than ten years imprisonment but made no oral argument regarding overrepresentation of his criminal history.

The court stated on the record that it had reviewed Pacheco's sentencing memorandum, in which he argued that his criminal history was overrepresented, and afforded Pacheco an opportunity to argue the issue at the sentencing hearing. The court stated its reasons for imposing a sentence of 120 months—including the need to provide deterrence and to provide Pacheco with necessary education and treatment in an institutional setting. The court clearly considered the extent of Pacheco's criminal history in reaching a proper sentence, as evidenced by the court stating that Pacheco "ma[de] one mistake after another." Thus, while the district court did not expressly state its rejection of Pacheco's overrepresentation argument, it is apparent, reading the sentencing transcript as a whole, that the court considered Pacheco's overrepresentation argument and concluded that a downward departure on that ground was inappropriate.

IV.

For the reasons stated above, we affirm Pacheco's conviction and sentence.