NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0001n.06

Case No. 22-4051

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRANDON SANDERS,

    Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 02, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

OPINION

---

Before: BATCHELDER, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Brandon Sanders pled guilty to a four-count indictment charging him with bank robbery in violation of 18 U.S.C. § 2113(a) and (f). At sentencing, the district court imposed a within-Guidelines sentence of 120 months' imprisonment. Sanders now appeals that sentence as procedurally unreasonable, arguing that the district court failed to consider a principal argument in his motion for a downward variance and erroneously applied a two-point enhancement for threat of death. Because the record fails to support Sanders's arguments, we affirm.

I.

Brandon Keith Sanders pled guilty to four counts of bank robbery under 18 U.S.C. § 2113(a) and (f). In February 2022, three and a half months after being released from a nine-year prison sentence for aggravated robbery, Sanders robbed four banks. Sanders committed each robbery by showing the teller a note indicating he had a gun. The first note read, "Give me cash

now! Gotta gun not playing!" in all capital letters. DE 18, PSR, Page ID 69. The second note read, "Give me the money and I have a gun." *Id.* at 70. The third note directed the teller to "[g]ive him all the money and that [he] may or may not have a gun." *Id.* (second alteration in original). The fourth note read, "Give me money, I have a gun." *Id.* Sanders did not speak much or at all during the robberies. In the first robbery, Sanders greeted the teller before reaching into his sweatshirt pocket and displaying the note, and in the third robbery, Sanders said only the words "come on." *Id.* at 69, 70. Sanders did not shout or display a gun.

After Sanders pled guilty to the four-count indictment, the United States Probation Department issued a presentence report. The presentence report applied a two-point enhancement under U.S.S.G. § 2B3.1(b)(2)(F) to each count because Sanders made a threat of death during the commission of each robbery—specifically, the report found that each of the notes' statements that Sanders had a gun would instill in a reasonable person a fear of death. The ultimate offense level, plus Sanders's criminal history, placed his Guidelines range at 100 to 125 months. Sanders objected to the enhancement for threat of death, maintaining that he "did not possess, fire, or display a weapon," and that he "did not state he would use a weapon to kill anyone" nor "make gestures indicating he would kill anyone." DE 18, PSR, Page ID 88. The Probation Officer rejected this argument, stating that U.S.S.G. § 2B3.1(b)(2)(F) hinges not on a precise statement of an intent to kill, but rather on whether the offender's conduct instills in a reasonable person a fear of death. The officer further found that the language in Sanders's notes achieved that.

In his presentence memorandum, Sanders advanced two arguments. First, he reiterated his objection to the threat of death enhancement. Without the enhancement, Sanders noted that his Guidelines range would be 84 to 105 months. Sanders then argued for a downward departure to 70 months as sufficient under the sentencing factors. This was because Sanders's criminal history

showed consistent offenses and incarceration since age 14. Sanders argued that this troubled history demonstrated "institutionalization," or the "negative psychological effects of imprisonment," entailing a dependence on the institutional structure to control behavior and a decreased ability to refrain from harmful or self-destructive behavior. DE 20, Def. Sentencing Mem., Page ID 99. Sanders requested reentry assistance and "a way to address the negative psychological effects of imprisonment," both of which would "reduce his risk of recidivism." *Id.* at 100 (citing 18 U.S.C. § 3553(a)(2)(B), (C)). Sanders's fiancée, Cori Isom, also submitted a letter of support containing similar arguments. *See* DE 21-1, Letter of Support, Page ID 102–03 ("Mr. Sanders was taken into the prison system early, so a lot of things that someone on the outside would have the ability to learn he was limited"; "With Mr. Sanders being away for so long, not around the people he cares about, also losing people in the process . . . [t]hat can do a lot to someone's mental and emotional state.").

During the sentencing hearing, the district court first discussed Sanders's objection to the threat of death enhancement. After hearing argument from Sanders's counsel on the "mitigating circumstances," specifically that Sanders did not make any movement or other indication that he had a weapon, the district court found that the bank tellers could reasonably perceive that their life was in danger, and thus found a threat of death by a preponderance of the evidence. The district court then calculated the Guidelines range as 100 to 125 months, then heard from Sanders's counsel, Sanders himself, and the government. Sanders's counsel explicitly referred to and then reiterated Sanders's second argument in his sentencing memorandum, noting that Sanders's first interaction with the law was at age 14, and that he had been involved in the criminal justice system since then, but that Sanders recognized he needed help and positive programming to "transition back into society" with "extra support." DE 33, Sentencing Hr'g, Page ID 191–92. Then Sanders

addressed the court, apologizing to those he hurt and explaining his belief that a long prison term would not help him, specifically that it would "do nothing" and it was not "the type of help [he] need[ed]." *Id.* at 194–95. The government then argued for a sentence within the Guidelines range, also noting that Sanders's state institution record showed 148 conduct reports for various rule violations, 30 of them for obscene acts, during his previous terms of incarceration.

Before proceeding with sentencing, the district judge noted that he had "listened carefully to both counsel and most significantly" to Sanders himself. *Id.* at 197. The district court then weighed the 18 U.S.C. § 3553(a) factors and held that a sentence within the advisory range, but at the high end—120 months—was sufficient but not longer than necessary to achieve the goals of sentencing. Particularly relevant was the fact that Sanders had just been released from his nine-year prison term for a similar crime, and that the previous sentence thus had not served as an effective deterrent.

Finally, the district court asked whether there were any objections from either side. Sanders's counsel objected to the "procedural reasonableness, in particular, using the prior sentence that [Sanders] served as a foundation for this one and not fully accounting for the mitigating factors we developed." *Id.* at 200. The district judge acknowledged that he understood "most of the objections," disagreed with Sanders's counsel on the use of the prior sentence, and adjourned. *Id.* Sanders timely appealed.

## II.

On appeal, Sanders challenges his sentence on two grounds. First, Sanders claims that the district court procedurally erred by failing to address his argument for a downward variance, which he raised both at the sentencing hearing and in his sentencing memorandum. Second, Sanders

claims the district court erred by applying the "threat of death" enhancement under U.S.S.G. § 2B3.1(b)(2)(F) to each of the four bank robbery counts.

III.

Sanders claims that the district court procedurally erred by failing to explicitly address his argument for a downward variance of 70 months premised on Sanders's psychological health and "institutionalization" issues due to his history of incarceration. The parties agree that we review the district court's determination for abuse of discretion.[1]

---

[1] The government seems to lay the foundation for a finding that plain error, rather than abuse of discretion, applies because Sanders did not properly preserve his objection. But the government does not round out this argument. The government alleges that Sanders's response to the district court's *United States v. Bostic* question, in which he objected to the "procedural reasonableness, in particular . . . not fully accounting for the mitigating factors we developed[,]" lacked sufficient specificity concerning which mitigating factors he was referencing. DE 33, Sentencing Hr'g, Page ID 200. The Sixth Circuit requires a party's *Bostic* objection to contain a "reasonable degree of specificity" that "adequately apprise[s] the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)). If a party answers the court's *Bostic* question with "such a high degree of generality that the district court has no opportunity to correct its purported error," plain error review applies. *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009). In *Simmons*, the court held that defense counsel's objection to the "procedural . . . aspect[]" of the sentence, without any specific allegation that the sentencing judge failed to address her policy argument, nor any specific objection to that purported failure, was too general and thus plain error review applied. *Id.* at 355–58 (ellipses and alteration in original). Here, although Sanders did not specifically object that the district court had failed to consider his "institutionalization" argument, his objection referenced "mitigating factors." DE 33, Sentencing Hr'g, Page ID 200. True, considering that Sanders's counsel and the district court discussed "mitigation" and "mitigating factors" in the context of the threat of death enhancement, it may not have been clear to the district judge that Sanders was then referring to the "institutionalization" argument, as opposed to the threat of death argument, and so Sanders's statement may not have "adequately apprised the trial court of the true basis for his objection." *Bostic*, 371 F.3d at 871 (quoting *LeBlanc*, 612 F.2d at 1014); *see also United States v. Taylor*, 800 F.3d 701, 715 (6th Cir. 2015). Even so, Sanders's objection was more specific than those rejected in *Simmons*, 587 F.3d at 355 ("Your Honor, I object just for the record for the procedural, substantive aspects."), *United States v. Harmon*, 607 F.3d 233, 237 (6th Cir. 2010) ("Only as to the concurrency, Your Honor."), and *United States v. McAllister*, 491 F. App'x 569, 577 (6th Cir. 2012) ("[W]e would just reserve objections to the sentence."). Abuse of discretion, rather than plain error review, applies.

This court reviews procedural sentencing challenges under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 52 (2007). "A sentence is procedurally reasonable if the district court did not commit any significant procedural errors," *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022), such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Adkins*, 729 F.3d 559, 563 (6th Cir. 2013) (alteration in original) (quoting *Gall*, 552 U.S. at 51). Sentences within the applicable Guidelines range enjoy a presumption of reasonableness, *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008), and to prevail under the abuse of discretion standard, a defendant's argument must go beyond "assert[ing] that the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

"When a defendant raises a particular[, nonfrivolous] argument in seeking a lower sentence," the sentence will be procedurally reasonable if the record reflects "both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (alteration in original) (quoting *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007)). But "the district court is not required to 'give the reasons for rejecting any and all arguments [made] by'" the defendant for an alternative sentence. *Id.* (alteration in original) (quoting *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc)); *see also United States v. Judge*, 649 F.3d 453, 457 (6th Cir. 2011) ("[I]t is well-settled that [the district court] is not required to respond to every argument raised by the defendant."). And "within-Guidelines sentences need not be explained with the same level of detail as non-Guidelines sentences." *Judge*, 649 F.3d at 458. Rather, the inquiry "is whether the

record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010) (quoting *Gapinski*, 561 F.3d at 474); *see also United States v. Petrus*, 588 F.3d 347, 352 (6th Cir. 2009) (explaining that "'a district court's failure to address each argument [of the defendant] head-on will not lead to automatic vacatur' if the context and the record make the court's reasoning clear" (alteration in original) (quoting *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007)). Our review is a "functional" one, determining "whether, based on the entirety of the sentencing transcript and written opinion, . . . we are satisfied that the district court fulfilled this obligation." *Gunter*, 620 F.3d at 646. The focus is not "on what the transcript reveals that the court said," but "more on what the transcript reveals that the court did." *Id.*; *see also United States v. Chiolo*, 643 F.3d 177, 185 (6th Cir. 2011).

Sanders's argument for a downward variance of 70 months due to his institutionalization was not frivolous, and thus was entitled to consideration by the district court. *See Chiolo*, 643 F.3d at 183 (treating Chiolo's arguments regarding his lack of psychological counseling, his mother's dementia, and his need to undergo anger management as nonfrivolous sentencing arguments); *United States v. Montgomery*, 787 F. App'x 272, 280 (6th Cir. 2019) (treating defendant's difficult childhood and resulting mental health issues as a nonfrivolous sentencing argument); *United States v. Campbell*, 434 F. App'x 507, 512 (6th Cir. 2011) (treating the severity of the defendant's mental health issues as a nonfrivolous sentencing argument). The question then is whether, based on a functional review of the record, it is clear that "the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's

circumstances and took them into account in sentencing him." *Gunter*, 620 F.3d at 646 (quoting *Gapinski*, 561 F.3d at 474).

The principles set out in *United States v. Chiolo* resolve Sanders's claim. Chiolo claimed that his sentence was procedurally unreasonable because the district court did not address several of his nonfrivolous arguments, some of which related to ongoing mental health issues, for a within- or below-Guidelines sentence. *Chiolo*, 643 F.3d at 182. This court acknowledged that the district court had not expressly addressed these arguments, but reasoned that the "detailed rationale" that the district court gave for its sentencing decision was "logically responsive" to Chiolo's "conceptually simple" arguments for a lesser sentence. *Id.* The district court's consideration of and reasoning for rejecting those arguments was thus "apparent from the 'context and the record,'" and so it did not abuse its discretion. *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 359 (2007)).

As in *Chiolo*, the district court's imposition of a sentence at the high end of the Guidelines' recommendation, given the seriousness of Sanders's offense and the proximity to his release from a nine-year sentence for a similar crime, implicitly rejected Sanders's conceptually straightforward argument for a lesser sentence due to psychological issues generated by his history of incarceration. First, it is clear from the record that the district court listened to Sanders's downward variance argument. *See Gunter*, 620 F.3d at 646. In presenting his argument on the appropriate sentence, Sanders's counsel explicitly referenced both the sentencing memorandum and the downward variance argument within it, highlighting Sanders's consistent involvement in the criminal justice system from a young age. Then Sanders himself, in less eloquent terms, made the same argument, asserting that a longer sentence was not "the type of help [he] need[ed]" and that it would "do nothing." DE 33, Sentencing Hr'g, Page ID 195. The district judge explicitly

acknowledged that he had "listened carefully" to Sanders's counsel and "most significantly" to Sanders himself. *Id.* at 197.

The record also shows that the district court considered the supporting evidence, especially Isom's letter of support, which contained similar arguments for leniency based on psychological issues incurred from incarceration beginning at a young age. *See Gunter*, 620 F.3d at 646. The record further demonstrates that the district court was fully aware of Sanders's circumstances and took them into account when sentencing him. *Id.* In making the sentencing determination, the district court acknowledged its obligation to consider everything it had learned about Sanders, along with the concurrent obligation to consider the four crimes, the advisory range, and the other § 3553(a) factors. The district court also demonstrated, by discussing Isom's letter with Sanders, that it had read and considered that information about Sanders's history and characteristics. Finally, the district court imposed the substance abuse treatment and testing condition of supervised release, showing consideration for Sanders's self-reported substance use in his PSR. The record accordingly makes clear that the district court understood Sanders's history and circumstances and the nature of his downward variance argument. *Cf. United States v. Wallace*, 597 F.3d 794, 806 (6th Cir. 2010) (finding that no part of the record made clear that the district judge understood the defendant's nonfrivolous argument).

The district court's decision to impose a within-Guidelines sentence highlighted both the fact that Sanders committed the four robberies only a few months after being released from a nine-year term for a similar crime and the seriousness of the robberies, specifically the tellers' reasonable belief that Sanders had a gun and that their lives were in danger. As in *Chiolo*, this "detailed rationale" was "logically responsive" to Sanders's "conceptually simple" arguments for a lesser sentence. *Chiolo*, 643 F.3d at 182. Sanders's request to vary downward to a sentence

lower than the nine-year (108-month) sentence he had just served for a similar crime was conceptually simple and straightforward. *See Rita*, 551 U.S. at 359; *Chiolo*, 643 F.3d at 182; *Judge*, 649 F.3d at 457–58 (noting that a district court need not respond to straightforward arguments). The imposition of a sentence on the high end of the Guidelines—120 months— implicitly rejected Sanders's argument that a lesser sentence would help him combat further institutionalization effects. *See Chiolo*, 643 F.3d at 184. When a judge decides simply to apply the Guidelines, doing so does not require a lengthy explanation. *Taylor*, 800 F.3d at 715 (quoting *Vonner*, 516 F.3d at 387). While the judge here might have said more, "[w]here a matter is . . . conceptually simple . . . and the record makes clear that the sentencing judge considered the evidence and arguments," the law does not require the judge to write—or say—more. *Rita*, 551 U.S. at 359. The district court here did not abuse its discretion in imposing a within-Guidelines sentence where the record shows the court "listened carefully" to and considered, yet implicitly rejected, Sanders's nonfrivolous argument. *See* DE 33, Sentencing Hr'g, Page ID 197.

Sanders's arguments to the contrary are unavailing. Sanders claims that there is an incongruity in our case law between a more formalistic approach that would require the district court to respond directly to the nonfrivolous argument and a more functional approach that focuses on the overall sentencing record to determine whether the district court considered the nonfrivolous argument. Sanders points to an unpublished case, *United States v. Moore*, 654 F. App'x 705 (6th Cir. 2016), for this proposition. There are a few responses to this argument. First, Sanders acknowledges that there are published cases in this circuit that definitively adopt the more functional approach. Second, while *Moore* points out what it views to be some "imprecision" in our case law between a requirement of a formalistic approach and a functional approach, *Moore* itself clearly adopts the functional approach as the governing standard. *See Moore*, 654 F. App'x

at 710–11 (holding that "the record must reflect both (1) that the district court considered a defendant's nonfrivolous argument for a particular sentence, and (2) why that argument was rejected," and noting that the court's "consideration of the argument and its reasons for rejecting the same need not, however, always be explicit or specific; the record might be sufficient for us to extract this information implicitly and contextually"). *Moore* thus does not propose a hybrid approach as Sanders asserts, but instead follows the functional approach of *Gapinski*, *Gunter*, *Vonner*, and *Chiolo*, among others. True, *Moore* cautioned that "the better practice" for a district court is "to give explicit reasons for rejecting all non-frivolous arguments." *Id.* at 711 (quoting *Chiolo*, 643 F.3d at 185). But "the better practice" is not the governing practice. And finally, the cases that Sanders cites for the proposition that the district court failed to consider the nonfrivolous argument, thus rendering the sentence procedurally unreasonable, do not refute the functional approach.[2]

---

[2] *Wallace*, 597 F.3d at 803–07 (acknowledging that "[i]t is well-settled that a district judge need not 'give the reasons for rejecting any and all arguments by the parties for alternative sentences,'" and that a district judge must only "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing") (first quoting *Vonner*, 516 F.3d at 387, then quoting *Gall*, 552 U.S. at 50); *Gapinski*, 561 F.3d at 474 (acknowledging that "the district court is not required to 'give the reasons for rejecting any and all arguments [made] by the parties for alternative sentences,'" and only that "the *record must reflect* both that the district judge considered the defendant's argument and that the judge explained *the basis* for rejecting it" (alteration in original) (emphases added) (first quoting *Vonner*, 516 F.3d at 387, then quoting *Lalonde*, 509 F.3d at 770)); *United States v. Peters*, 512 F.3d 787, 788–89 (6th Cir. 2008); *United States v. Jones*, 489 F.3d 243, 251–52 (6th Cir. 2007) (holding that the "record reflect[ed] that the district court considered all of Jones's arguments"); *United States v. Davy*, 433 F. App'x 343, 351–52 (6th Cir. 2011) (acknowledging that a district judge can "implicitly" address a defendant's argument); *United States v. Robertson*, 309 F. App'x 918, 923 (6th Cir. 2009) (engaging in a "[c]omplete review of the sentencing transcript" and merely finding that the sentencing transcript did not show that the district judge understood or considered the argument).

IV.

Sanders also contends the district court erred in applying the two-level enhancement for threat of death. Specifically, he alleges its analysis of the threat of death enhancement failed to engage in a full review of mitigating factors per *United States v. Wooten*, 689 F.3d 570 (6th Cir. 2012). This court reviews de novo the district court's application of the Guidelines to a particular set of facts, including whether the facts warrant the sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F). *United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002).

The Guidelines application note for the threat of death enhancement clarifies the threat may be either oral or written, and the defendant need not state expressly his intent to kill the victim for the enhancement to apply. U.S.S.G. § 2B3.1(b)(2)(F), comment. n.6. The enhancement turns on whether the offender engaged in conduct that would instill in a reasonable person a fear of death. *Id.* *United States v. Clark*, 294 F.3d 791 (6th Cir. 2002), and *United States v. Winbush* both held that a note in a bank robbery stating some variation of "I have a gun," even without any threatening gestures or display of a weapon, would instill in a reasonable bank teller a fear of death. *Clark*, 294 F.3d at 795; *Winbush*, 296 F.3d at 443. *Wooten* acknowledged that the statement "I have a gun" can be sufficient on its own to warrant the threat of death enhancement, but cautioned this is not a per se rule. *Wooten*, 689 F.3d at 574–75. *Wooten* further directed courts to consider any mitigating factors, if present, such as "the robber's statements, body language and overall demeanor, tone of voice, . . . mode of communication," and the "teller's impression of the events." *Id.* at 574–77. *Wooten* does not command a different outcome here for a number of reasons. First, and most significantly, Sanders used demand notes in each robbery, a "hallmark[] of experienced bank robbers" that can reasonably "contribute to the intimidating nature of an encounter." *See id.* at 579 (citing *United States v. Pacheco*, 466 F. App'x 517, 523 (6th Cir. 2012)). Wooten used no

such demand notes. *Id.* The use of the notes here thus differentiates this case from *Wooten. See, e.g.*, *United States v. Manley*, 618 F. App'x 276, 281 (6th Cir. 2015). And second, unlike in *Wooten*, there is no testimony from any of the tellers as to Sanders's demeanor that would show he was nonaggressive or nonthreatening. *See Wooten*, 689 F.3d at 579; *see also Manley*, 618 F. App'x at 281. Sanders's claims that he was "non-aggressive" and "calm and friendly" appear to be based only on his own contentions, and thus are unpersuasive. *See* CA6 R. 30, Appellant Br., at 25. Nor does the fact that Sanders began the first robbery by greeting the teller mitigate the teller's reasonable fear of death, because (1) that greeting occurred before Sanders passed the demand note, and (2) a reasonable teller would view the purpose of the casual greeting, in light of the note, as an attempt to avoid drawing attention and allowing for a more likely escape. As in *Clark* and *Winbush*, Sanders's notes demanding the tellers to give him money and that he had a gun[3] created a reasonable fear of death in each of the tellers, and there were no mitigating circumstances to counteract that reasonable fear. *Clark*, 294 F.3d at 795; *Winbush*, 296 F.3d at 443.

V.

For the foregoing reasons, we affirm Sanders's sentence.

---

[3] True, Sanders's note in his third robbery stated that he "may or may not have a gun." DE 18, PSR, Page ID 70. But no reasonable person would take that statement to mean he does not have a gun, or even that it was likely he did not have a gun. The only reason to threaten that you "may or may not have a gun" is to create in a reasonable person a fear that you do have a gun, and that you will use it if they do not comply. This statement would instill a fear of death in a reasonable teller. *See Wooten*, 688 F.3d at 580 (Sutton, J., dissenting).