**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rebecca GIBSON, Defendant–Appellant.**

No. 97–2313.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 1997.

Decided Aug. 14, 1998.

Daniel S. Reinberg (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Terence MacCarthy, Andrea P. Taylor (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, ESCHBACH, and COFFEY, Circuit Judges.

ESCHBACH, Circuit Judge.

In this case the parties ask us to decide whether the statement, "I have a gun," constitutes a "threat of death" for purposes of U.S.S.G. § 2B3.1(b)(2)(F) when made in the context of a bank robbery. The parties briefed and argued this case before we decided *United States v. Carbaugh*, 141 F.3d 791 (7th Cir.), *reh'g denied*, June 30, 1998, which squarely addresses the issue. In *Carbaugh*, we held that the statement, "I have a gun," constitutes a threat of death within the meaning of section 2B3.1(b)(2)(F) unless mitigating circumstances deprive the words of their plain meaning. Since there is no meaningful distinction between this case and *Carbaugh*, we affirm.

Rebecca Gibson committed two robberies. On August 6, 1996 she entered the Firstar Bank in Chicago, approached the teller, and said, "This is a robbery. Give me all your money. No funny stuff. I have a gun." The teller complied, and Gibson walked out with $3240 in cash. A week later, on August 12, 1996, Gibson committed the second robbery without referring to a gun. This time, she entered the First Chicago Bank and told the teller, "This is a robbery, give me the money, give me 50s and 100s, count it." The teller complied, and Gibson took away $3680. She was arrested later in the day in the company of a man named Enrico Gonzales. Gibson later pleaded guilty to two counts of robbery.

The FBI interviewed Gibson twice on the day of her arrest. During the first interview, she stated that she robbed two banks because she needed the money for herself and her three children. She said her boyfriend, Enrico Gonzales, had no involvement in the robberies and that she had met Gonzales only a month prior to the robberies.

After agents found a loaded pistol in Gibson's van, she gave her second FBI interview of the day. This time she stated that Gonzales instructed her to rob both banks and waited near her vehicle while she committed the robberies. However, she stated that neither she nor Gonzales possessed a gun at the time of either robbery.

Gibson gave a third account of the robbery at her plea hearing. There, she stated that

Gonzales held a gun in his lap en route to the second robbery. Finally, at sentencing Gibson stated that Gonzales had a gun during both robberies.

■■■ Whether a robber's statement can constitute an express threat of death involves the legal interpretation of a sentencing guideline which we review de novo. *See United States v. Jones*, 83 F.3d 927, 929 (7th Cir.1996). Whether the statement amounts to a threat of death under the circumstances is a factual question which we review for clear error. *Carbaugh*, 141 F.3d at 792–93 (citing *United States v. Hunn*, 24 F.3d 994, 998 (7th Cir.1994)).

The federal sentencing guidelines provide a base offense level of twenty for the crime of robbery. U.S.S.G. § 2B3.1. Once the base offense level is established, a "smorgasbord" of specific offense characteristics come into play. *Jones*, 83 F.3d at 929. At the top end of the scale, we add seven points to the base offense level if a firearm is discharged during the course of the robbery. At the bottom of the scale, we add two points if a threat of death is made. *Id.*

Until November 1, 1997, the two-point enhancement required that the defendant make an "express threat of death." Since that date, the Sentencing Commission has deleted the word "express" and now requires only a "threat of death." *Carbaugh*, 141 F.3d at 793. Thus, an issue is raised whether to apply the foregoing guideline or to consider the amended version as well.[1]

In *Carbaugh*, however, we found it unnecessary to decide whether the new amendment applies because the majority of circuits (including ours) had written the word "express" out of the guideline even before the Sentencing Commission did. *United States v. Figueroa*, 105 F.3d 874, 877 (3d Cir.1997) ("The majority of the courts of appeals ... have held that the defendant can make an express threat of death without explicitly threatening to *kill* the victim.") *cert. den.* —— U.S. ——, 117 S.Ct. 1860, 137 L.Ed.2d 1061 (1997); *see also United States v. Robinson*, 86 F.3d 1197, 1203 (D.C.Cir.1996) ("[W]e have concluded that express threats of death can be based on inferences."); *United States v. Murray*, 65 F.3d 1161, 1167 (4th Cir.1995); *United States v. Hunn*, 24 F.3d 994 (implied threats of death fall within the meaning of the guideline).

Since "the amendment adopted our Circuit's view, ... our analysis remains the same before and after November 1, 1997."[2] *Carbaugh*, 141 F.3d at 793. Under either version of the Guideline, therefore, the enhancement may apply even without an explicit threat to kill the victim.

Gibson argues that "I have a gun" indicates no willingness to act or harm the victim. According to the strict rules of grammar, Gibson may be correct. "I have a gun" is not a direct threat, but merely a declaration of possession. But *Carbaugh* has already foreclosed Gibson's argument. There we emphasized that "we do not examine the statement grammatically, or even from the robber's perspective." *Carbaugh*, 141 F.3d at 794. Instead, the proper focus is on the perspective of the reasonable teller. *Id.* (citing *Hunn*, 24 F.3d at 998). We think "a reasonable teller would ordinarily experience a fear of being shot when the robber confronting her announces he has a gun." *Id.* Our result accords with the Third Circuit's *United States v. Figueroa*, 105 F.3d 874 ("I have a gun" constitutes an express threat of death.).[3]

---

1. The Guidelines instruct that "if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2).

2. The amendment "adopts the majority appellate view which holds that the enhancement applies when the combination of the defendant's actions and words would instill in a reasonable [victim teller] a greater amount of fear than necessary to commit the robbery." *Carbaugh*, 141 F.3d at 793 (quoting U.S.S.G. Appendix C, amendment 552).

3. Even if we were to rely exclusively on the language of the pre–1997 commentary, Gibson would fare no better. Old application note 6 states that

> the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, *significantly greater fear than that necessary to constitute an element of the offense of robbery.*

U.S.S.G. § 2B3.1 comment. (n.6) (emphasis added).

As we said in *Carbaugh*, however, our holding is not absolute. Since our question involves sensitivity to fact and context, we are unwilling to hold that "I have a gun" always amounts to a threat of death. It is conceivable that unusual mitigating circumstances accompanying this statement could deprive the words of their "ordinary and expected meaning." *Carbaugh*, 141 F.3d at 795. Here, however, the district court pointed to no such mitigating factors. In view of the circumstances present in this case, Gibson's statement can only be construed as a threat of death under U.S.S.G. § 2B3.1(b)(2)(F).

Two other sentencing issues merit brief comment. First, Gibson argues that the enhancement she received for obstruction of justice was unwarranted, despite her concession that she changed her story every time she told it. We review the district court's obstruction of justice finding for clear error. *United States v. Francis*, 39 F.3d 803, 811 (7th Cir.1994). If two permissible views of the evidence exist, the fact-finder's choice between them cannot be clearly erroneous. *United States. v. McDonald*, 22 F.3d 139, 144 (7th Cir.1994).

Section 3C1.1 provides that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. The application notes list several examples of such conduct including (i) "providing materially false information to a judge or magistrate" and (ii) "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* comment. (n.3(f) & (g)). The district court found that the two level enhancement was appropriate because "defendant has wavered with respect to articulating a definitive story as to Gonzales' involvement in the robberies." Dist. Ct. Order of May 19, 1997 at 3.

Gibson argues that she did not lie to the court during her guilty plea, but rather lied to FBI agents during the initial two interviews. However, even if Gibson lied to the FBI and not to the court, her false statement (that there was no gun) conceals the very reason for the robbery—coercion with a gun. Such coercion is material because it could have a significant impact during sentencing. *See United States v. Thomas*, 11 F.3d 1392, 1400 (7th Cir.1993) ("[T]he definition of a 'material' statement embraces false statements that would tend to affect a defendant's sentence . . . ." (quoting *United States v. Rodriguez*, 943 F.2d 215, 218 (2d Cir.1991))). Coercion of a defendant could warrant a lower sentence within the guideline range or it could form the basis of a downward departure under U.S.S.G. § 5K2.12. *See United States v. Steels*, 38 F.3d 350, 352 (7th Cir.1994). In fact, Gibson moved for a downward departure under § 5K2.12 (coercion) in the district court. Accordingly, her false statement to the FBI was material.

In addition, there is evidence that the statement impeded the investigation. The government claims that defendant's misrepresentations obstructed its investigation of the robberies "to such a large and irrevocable extent that the government was forced to dismiss the criminal complaint against Gonzales." Dist. Ct. Order of May 19 at 5. Gibson, however, responds that the government knew about the gun, despite her statement to the FBI. For example, when FBI agents searched Gibson's van, they recovered a loaded .357 magnum. Likewise, Enrico Gonzales's brother Alford told the FBI that Enrico admitted having a .357 magnum during the robbery. In light of such evidence, Gibson claims that her early failure to incriminate Gonzales "did not force the government to dismiss the criminal complaint against Enrico."

However, Gibson cannot deny that the case against Gonzalez would have been significantly stronger but for her statement that no gun was present. She raised the issue of the

---

Here, we note that Gibson committed the offense of robbery twice. During the second robbery, she was able to instill sufficient fear to rob the teller without reference to a gun. In sharp contrast, we think Gibson's reference to a gun in the first robbery instilled "significantly greater fear than necessary to constitute an element of the offense of robbery."

gun only after the government dismissed a criminal complaint against Gonzales. One permissible view of the evidence is that defendant's false statements to the FBI impeded the investigation and prosecution of Gonzales. *See United States v. Francis*, 39 F.3d at 811 (After defendant changed his story and the government dismissed charges against a coconspirator, "the district court was entitled to conclude that [defendant]'s retraction caused the government to ... re-evaluate its case, thereby impeding the investigation and prosecution of the case.").

■ Finally, Gibson argues that the district court should have granted a reduction based on her acceptance of responsibility. The district court's acceptance of responsibility determination is a factual finding, which we review for clear error. *United States v. Wetwattana*, 94 F.3d 280, 285 (7th Cir.1996).

■ We note that Gibson's four accounts of the robbery describe increasing levels of coercion. In the first account, Gonzales was not aware of the robbery. In the second, he ordered the robberies and Gibson feared that he would beat her if she refused. In the third account, he held a gun on his lap during one of the robberies. And in Gibson's final story, Gonzales possessed a gun during both robberies. Gibson's increasing efforts to invoke a claim of coercion suggest that she attempted to shift blame to Gonzalez rather than accept responsibility for her conduct. *Cf. United States v. Simpson*, 995 F.2d 109, 112 (7th Cir.1993) (Where defendant attempts to shift responsibility to government agent and "persists in asserting entrapment, she cannot also claim acceptance of responsibility."). Since the district court had a permissible view of the evidence, we defer to its factual finding that Gibson failed to accept responsibility for her conduct.

Accordingly, the decision of the district court is

AFFIRMED.