**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0482n.06

No. 08-3287

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 06, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MICHAEL SOGAN, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |

Before:      KEITH, BOGGS, and MCKEAGUE, Circuit Judges.

PER CURIAM.

Defendant-Appellant Michael Sogan ("Sogan") robbed three banks in two days in early August of 2007. He facilitated the crimes in two ways. First, Sogan declared that the tellers would only "go home" upon following his directions. Second, he placed a hand on his waist to imply that he was carrying a weapon. Sogan ultimately pleaded guilty to three counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). At sentencing, the district court applied the two-level enhancement for threats of death under U.S.S.G. § 2B3.1(b)(2)(F). Because the district court did not err in sentencing Sogan, we **AFFIRM**.

**I.**

The facts giving rise to Defendant's unarmed robbery charges are undisputed. At approximately 10:30 a.m. on August 4, 2007, Sogan approached the counter of a Dollar Bank teller

in Brooklyn, Ohio. With one hand by his waist, he told her to "give [him] money." The teller, fearing that Sogan was armed, handed him money and bait bills in the amount of $1,000 until Sogan said, "enough." Sogan then fled. A witness within the bank observed a blue vehicle abruptly pull out of a parking space and nearly collide with another vehicle, just moments after Sogan ran outside.

Approximately five hours later, Sogan robbed a U.S. Bank located in Cleveland, Ohio in a similar manner. He again placed a hand on his waist, declaring, "I am only going to ask this once and once only . . . Do you want to go home tonight? If you do, give me your money." As before, the teller handed him both bait bills and money worth approximately $649. As before, Sogan fled. A witness outside the bank observed a man run from the building before jumping into the backseat of a blue vehicle, which pulled off. The teller later reported that as a result of the robbery she felt emotionally raped, and that the incident robbed her of part of her life. She indicated that she not only feared for her life during the incident, but became paranoid at work thereafter.

On August 6, 2007 at approximately 2:14 p.m., Sogan robbed a Chase Bank in Lorain, Ohio. According to the victim teller, Defendant approached her counter and demanded that she give him fifty and twenty-dollar bills, "or you won't go home tonight." When the teller asked Sogan to repeat what he had said, he replied that if she failed to follow directions, she wouldn't "go[] home." After the teller handed Defendant approximately $2,059 from her drawer, Defendant left the bank.

Upon his arrest on August 8, 2007, defendant admitted to having robbed all three banks. In particular, he admitted to: (1) having stolen a used, blue, four-door Chrysler from a used-car lot; (2) having robbed Dollar Bank on the morning of either August 3 or 4, 2007; (3) drinking and getting high after that first robbery; (4) luring his girlfriend's nephew to drive him to a U.S. Bank branch,

which he then robbed; and (5) abandoning the stolen vehicle in a parking lot after using it to travel to and flee from Chase Bank, from which he stole in excess of $2,000.

## II.

On August 29, 2007, a federal grand jury in the Northern District of Ohio returned a three-count indictment charging Defendant with unarmed robbery. *See* 18 U.S.C. § 2113(a). Pursuant to a plea agreement, Sogan pleaded guilty to all counts on February 5, 2008. On February 19, 2008, he appeared before the district court for sentencing.

The Presentence Investigation Report ("PSR") prepared for sentencing calculated a base offense level of 20 for unarmed robbery. *See* 18 U.S.C. § 2113(a); U.S.S.G. § 2B3.1. The court applied one two-level enhancement because Defendant stole property from a financial institution and a second two-level enhancement because he issued a death threat during the course of the robbery, elevating Defendant's offense level to 24. U.S.S.G. § 2B3.1(b)(1), (b)(2)(F). The court then applied a three-level enhancement for his conviction on multiple counts, U.S.S.G. § 3D1.2, before applying a three-level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. After determining that the total offense level was 24 and the criminal history category was VI, the court calculated a Guidelines range of 100 to 125 months. The court then imposed a 112-month sentence followed by three years of supervised release.

During the sentencing hearing, defendant objected to the PSR's recommendation of a two-level enhancement for his threatening statements. The district court denied his objection, noting that

> [A] couple of these [tellers], their lives have been turned around and they have to get medication and see social workers or psychologists or psychiatrists . . . because of your misconduct. That's one of the reasons that . . . I don't see how anyone could

3

take the comments any other way than there may be some physical danger that would be put on them if they didn't cooperate.

Whether these facts warrant a sentence enhancement pursuant to § 2B3.1(b)(2)(F) is a legal conclusion subject to *de novo* review. *United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002) (citing *United States v. Alexander,* 88 F.3d 427, 428 (6th Cir. 1996)).

III.

Pursuant to the 1997 amendments to §2B3.1(b)(2)(F), death threats may be express or implied. *Winbush,* 296 F.3d at 443. This court has repeatedly held that notes containing the statement, "I have a gun," qualify for the enhancement for threats. *Id.* The question now before the court is whether a gesture implying gun possession triggers the two-level enhancement for threat of death, as do oral and written statements that communicate gun possession.

Appellant argues that he did not issue a threat of death within the meaning of U.S.S.G. § 2B3.1. He first contends that no weapon was displayed or suggested.[1] However, the Sixth Circuit has held that the gun need not be shown for purposes of applying this enhancement. *Winbush*, 296 F.3d at 443 (holding that presenting a note to a teller stating that "I have a gun" is a threat of death whether or not the defendant displayed the weapon); *accord United States v. Jennings*, 439 F.3d 604, 610-11 (9th Cir. 2006) (applying the threat-of-death enhancement to a defendant who announces but does not show a gun, and does not threaten to use it); *United States v. Murphy*, 306 F.3d 1087, 1089 (11th Cir. 2002) (holding that an unarmed defendant who declared, "I have a gun," made a threat of death within the meaning of the enhancement). Also, the comments referencing §2B3.1(b)(2)(F)

---

[1]Appellant concedes that he "had his hand on his waist" during the U.S. Bank robbery.

4

make clear that non-verbal conduct can warrant the enhancement. By way of example, the comments cite "an oral or written demand using words such as . . . 'Give me your money or else' (where the defendant draws his hand across his throat in a slashing motion)[.]" U.S.S.G. § 2B3.1, cmt. n. 6.

Second, Appellant notes that each confrontation was "brief" and that the Government failed to prove that Sogan intended to do anyone any harm. This argument, which addresses Sogan's subjective state of mind, is wholly irrelevant to the governing legal standard. The comments to U.S.S.G. § 2B3.1 note that oral or written statements, acts, gestures, or some combination of these, can constitute a threat of death. U.S.S.G. § 2B3.1, cmt. n. 6. The comments continue:

> [T]he defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as . . . "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)," or "Give me the money or you are dead" would constitute a threat of death. The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

U.S.S.G § 2B3.1, cmt. n. 6.

The standard here is objective, and Sogan's conduct well meets it. Sogan's gesturing is analogous to the comments' reference to drawing a finger across one's throat. In both cases, the implication is clear: follow my direction or face physically grave consequences. Accordingly, the combination of Sogan's statements and actions could "instill in a reasonable person, who is a victim of the offense, a fear of death." § 2B3.1, cmt. n. 6. Defendant told two tellers that they would not make it home unless they handed him large sums of money. He suggestively placed his hand by his

waist as he uttered these words, which caused the tellers to believe that he could enforce the threat with a weapon. Both the U.S. Bank and Chase Bank tellers interpreted Sogan's statements as a threat of death.[2] One indicated that she feared for her life. The other reported that the incident was "traumatic because she had no way of knowing if he had a gun and . . . would shoot." A reasonable victim forcefully ordered to turn over her drawer's money to a bank robber would experience a fear of death, having concluded that Sogan may be carrying a weapon.

Sogan's decision to hold his hand by his waist implied his possession of a weapon. His threatening statements, coupled with this telling gesture, warranted the application of a two-level enhancement for making a threat of death. Indeed, "[t]he only purpose for the conduct coupled with the command is to force the victim, through fear of a deadly weapon, to capitulate." *United States v. Martinez*, 602 F.3d 1156, 1159 (10th Cir. 2010). Sogan's statements and behavior constitute a threat of death for purposes of the § 2B3.1 enhancement.

## IV.

The district court also did not err by declining to grant Sogan a downward variance on the basis of his abusive childhood and addictions. Sogan argues that he was entitled to a downward variance; the Government offers no response. We review the district court's sentencing determination for reasonableness, *United States v. Thomas,* 498 F.3d 336, 339 (6th Cir. 2007), under a "deferential abuse-of-discretion standard." *Gall v. United States,* 552 U.S. 38, 51 (2007). Sogan first argues that the district court failed to address his abusive childhood. While we "recognize two

---

[2]One bank teller, when asked whether she interpreted Sogan's behavior as a threat of death, "responded with a definitive 'Oh, yes.'"

paths by which a sentencer may rely on a defendant's family circumstances to arrive at a sentence below the recommended range: (1) Guidelines-based departures . . . and (2) variances from the advisory range in light of the § 3553(a) factors," *United States v. Elliot,* 327 F. App'x 540, 546 (6th Cir. 2009) (citing *United States v. Blue,* 557 F.3d 682, 687 (6th Cir. 2009)), the court need not "explicitly state that it has considered and rejected each of defendant's arguments." *United States v. Berry*, 565 F.3d 332, 340-41 (6th Cir. 2009). It follows that the district court's decision not to explicitly address Sogan's upbringing was not an abuse of discretion.

The court did acknowledge Sogan's history of abuse of alcohol and drugs, however, and engaged him in a colloquy about his attempts at sobriety. The court determined that rather than mitigating Sogan's crime, his drug dependence may have aggravated it. The court noted:

> [P]art of the self-destruction has to do with it's all about Michael and using drugs or using alcohol, and then you take your frustrations out in doing other things. One of the things . . . [is that] your conduct has a very bad effect on a lot of other people. . . . These people in the bank or in the Giant Eagle, . . . . a couple of those people, their lives have been turned around and they have to get medication or see social workers or psychologists . . . .

This determination was within the district court's discretion, and does not constitute an abuse of such. Further, the district court properly discussed and considered the § 3553(a) factors. The district court therefore did not err by declining to vary below Sogan's advisory guidelines range.

## V.

For the foregoing reasons, we **AFFIRM** Sogan's conviction and sentence.