MOORE, J., delivered the opinion of the court, in which DONALD, J., joined. SUTTON, J. (pp. 579-84), delivered a separate dissenting opinion.
OPINION
KAREN NELSON MOORE, Circuit Judge.
On September 23, 2010, Defendant-Appellant James Wooten robbed the Green Bank in Gordonsville, Tennessee. During the robbery, Wooten casually approached a teller, placed his hands on the counter, and twice quietly stated, “I am going to rob you.” R. 41 (Sentencing Hr’g Tr. at 5). At first, Wooten’s demeanor left the teller with doubts as to the sincerity of Wooten’s demand. When the teller was slow to respond, Wooten finally said, “I have a gun. Give me your money,” at which point, the teller handed over approximately $4,130 in cash. Id.; Presentence Investigation Report (“PSR”) ¶ 5, at 4.
Wooten pleaded guilty to one count of bank robbery under 18 U.S.C. § 2113(a). Based on Wooten’s declaration that he had a gun, the district court imposed a two-level sentencing enhancement pursuant to United States Sentencing Guideline (“Guideline” or “U.S.S.G.”) § 2B3.1(b)(2)(F) for making a threat of death. Wooten challenges the enhancement and maintains that, in spite of his use of the phrase “I have a gun,” his conduct and demeanor were so nonthreatening as to eliminate the possibility that any reasonable teller under the circumstances would have believed his or her life to be in danger. Under the specific circumstances of this case, we agree. Accordingly, we REVERSE the district court’s imposition of the sentencing enhancement, VACATE Wooten’s sentence, and REMAND the case for resentencing in accordance with this opinion.
I. BACKGROUND
At Wooten’s sentencing hearing, bank teller Buddy Mason recalled the circumstances of the September 23 robbery. According to Mason, the robbery began after Wooten walked “casually” into the bank and approached the teller row. R. 41 (Sentencing Hr’g Tr. at 5). Wooten, who was fifty-six years old at the time, wore ordinary clothing and appeared to Mason to be a routine customer. After entering, *573 Wooten strolled over and placed one hand on the counter. According to Mason, Wooten was “not looking around or fidgeting or looking at anything” and his demeanor was “nonchalant.” Id. After motioning for Mason to lean in closer, Wooten “kind of whispered and said, I am going to rob you.” Id. at 5. Mason at first thought Wooten was “joking around.” Id. at 11. Indeed, Mason recalled that he was “not taking [the robbery] very seriously because [Wooten] was just so nonthreatening.” Id. at 9. With prompting from Mason, Wooten repeated the statement “I am going to rob you,” and Mason again questioned the sincerity of Wooten’s request. Id. at 5. At that point, Wooten “kind of got a serious look in his face” and said, “I have a gun, I want your money.” Id.[1]
Mason testified that the bank had instructed all employees to give money to a bank robber without asking any further questions. Consequently, because at that point he believed Wooten’s demand to be real, Mason turned his back to Wooten, obtained a bundle of bills, and handed them over. By that time, Wooten had both hands on the counter, leading Mason to believe that Wooten had no intention of reaching for anything. According to Mason, Wooten “was not acting like he was going to hurt me or anybody in the bank.” In fact, even though Wooten had told Mason that he had a gun, Mason said he “never felt threatened at all.” Id. at 10.
After obtaining the money, Wooten exited the bank and drove slowly away. Police stopped him only a few minutes later. Wooten later told investigators that he actually wanted to be caught and that he committed the robbery because “he was just tired of living in his car and he was running out of money.” PSR ¶ 7, at 5. The record also reflects that Wooten had attempted a similar bank robbery shortly before this one, but left empty handed after the teller at the other bank laughed at him.
Based on these facts, the district court applied the threat-of-death enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F). Initially, the district court emphasized that the relevant standard is an objective one, “[s]o whether or not Mr. Mason was actually in fear is not outcome determinative because that would be a subjective standard.” R. 41 (Sentencing Hr’g Tr. at 25). The district court indicated, however, that “whether Mr. Mason was in fear or not certainly is a set of facts that the Court should consider in determining what a reasonable person would believe.” Id. The district court therefore concluded that “Mason’s fear or lack of fear is an impor *574 tant fact to consider in determining what is reasonable, but it is not controlling.” Id.
Nonetheless, after recounting Mason’s testimony that Wooten’s demeanor was “nonchalant” and that he “never felt threatened [and] thought [Wooten] was joking,” the district court determined that the statement “I have a gun” was enough to constitute a threat of death. Id. at 26. Although the district court did not believe that the same would have been true for the statement “I have a weapon,” it reasoned that “to say I have a gun implies I will use it and implies I will shoot you and implies that if you are shot, you may die and that that is a threat of death.” Id. Accordingly, the district court concluded, “the statement of someone robbing a bank that I have a gun in the overall context of the facts in this case would cause a reasonable person who is a victim of the offense to fear death.” Id.
The two-level enhancement resulted in a Guidelines range of 37 to 46 months of imprisonment. In considering the 18 U.S.C. § 3553(a) factors, the district court found Wooten’s history and characteristics to be “largely mitigating,” noting Wooten’s military history, mental-health issues, difficult living circumstances, and nonexistent criminal record. Id. at 33. Although reiterating the seriousness of a bank robbery offense, the district court noted that “this is Mr. Wooten’s first offense, and he seems remorseful.” Id. The district court therefore imposed a thirty-seven month prison sentence—the bottom of the Guidelines range—and two years of supervised release. On appeal, Wooten challenges only the district court’s application of the threat-of-death enhancement pursuant to § 2B3.1(b)(2)(F).
II. ANALYSIS
We review de novo the district court’s application of the Sentencing Guidelines to a particular set of facts, including whether the facts as found warrant the sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F). United States v. Winbush, 296 F.3d 442, 443 (6th Cir.2002); see also United States v. McCarty, 628 F.3d 284, 289 (6th Cir.2010).
Section 2B3.1(b)(2)(F) instructs that “if a threat of death was made, increase [the offense level] by 2 levels.” To convey a threat of death, an offender must “engagef ] in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.” Id. cmt. n. 6. By way of example, the Guidelines provide the following nonexhaustive list of potential death threats:
oral or written demand[s] using words such as “Give me the money or I will kill you”, “Give me the money or I will pull the pin on the grenade I have in my pocket”, “Give me the money or I will shoot you”, “Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)”, or “Give me the money or you are dead.”
Id. As these statements make clear, the threat of death need not be explicit. Id. Nevertheless, the robber’s communication must be sufficient to permit a reasonable bank teller to fear that death is at least a reasonably likely result of his or her noncooperation.
Although the statement “I have a gun” lacks the type of “or else” condition present in the examples set out above, our cases have determined that the phrase can be sufficient on its own to warrant the threat-of-death enhancement. Winbush, 296 F.3d 442, 443 (6th Cir.2002). In United States v. Winbush, for example, we upheld a district court’s application of the enhancement after a bank robber presented a demand note that read “THIS IS A *575 HOLD-UP I HAVE A GUN 100’s 50’s and 20’s,” but did not make any oral statements or show the gun during the robbery. Id. at 442. We made a similar determination in United States v. Clark, 294 F.3d 791, 795 (6th Cir.2002), which involved a demand note that read “I have a gun. Do what you are told and you wont [sic] get hurt.” There, we found that “[r]eading the two phrases of the note together, the clear implication of the message is that failure to cooperate would result in being shot then and there by a gun. This would instill in any reasonable person, such as the teller in this case, a fear of death.” Id. Finally, relying on Winbush, we recently stated in United States v. Moore, 447 Fed. Appx. 721, 723 (6th Cir.2012) (unpublished opinion), that “advising a bank employee that one is armed suffices to support the enhancement.” Thus, we have clearly established that the statement “I have a gun” can constitute a threat of death for purposes of the § 2B3.1(b)(2)(F) enhancement. Other circuits are in accordance with this general proposition. See, e.g., United States v. Martinez, 602 F.3d 1156, 1159 (10th Cir.2010); United States v. Jennings, 439 F.3d 604, 611 (9th Cir.2006); United States v. Murphy, 306 F.3d 1087, 1090 (11th Cir.2002); United States v. Jennette, 295 F.3d 290, 292-93 (2d Cir.), cert. denied, 537 U.S. 1076, 123 S.Ct. 667, 154 L.Ed.2d 574 (2002); United States v. Gibson, 155 F.3d 844, 845 (7th Cir.1998).[2]
The government argues that these cases — and particularly Winbush — dictate the outcome here. Winbush, however, did not establish a per se rule that the statement “I have a gun” always constitutes a threat of death. Instead, Winbush stands only for the proposition that, in the absence of mitigating circumstances that erode the typical and expected impact of a bank robber’s announcement that he has a gun, the phrase “I have a gun,” without more, supports the threat-of-death enhancement. In other words, in cases presenting no facts to suggest that the context and circumstances of the robbery dulled the threatening implication of the words “I have a gun,” Winbush is the end of the analysis. On the other hand, where potentially mitigating factors are present, the court must go a step further and evaluate the overall circumstances of the robbery to determine whether a reasonable teller in that particular scenario would have perceived a threat of death. Thus, while the statement “I have a gun” certainly can be enough to support the threat-of-death enhancement — and in the majority of cases it is — the statement is not necessarily enough, especially when contextual circumstances undermine the otherwise threatening nature of the declaration.
Our interpretation is fully consistent with the plain language of the Sentencing Guidelines, which require some analysis of a reasonable victim’s perception of the situation' — namely, whether the offender’s overall conduct “would instill in a reasonable person, who is a victim of the offense, a fear of death.” U.S.S.G. § 2B3.1(b)(2)(F) cmt. n. 6. Thus, the sole focus is not the defendant’s choice of *576 words. Instead, as the Third Circuit stated, “In determining whether a threat is a ‘threat of death,’ the focus is on the reasonable response of the victim of the threat.” United States v. Thomas, 327 F.3d 253, 255 (3d Cir.), cert. denied, 540 U.S. 974, 124 S.Ct. 451, 157 L.Ed.2d 325 (2003). That inquiry is one that involves “sensitivity to fact and context,” Gibson, 155 F.3d at 847, and requires a court to consider the overall circumstances in which the statement occurred, Jennings, 439 F.3d at 611.
Although unusual, one can envision circumstances in which the nature of a robbery makes it objectively unreasonable for a victim of ordinary intelligence to believe that the robber, even if claiming to have a gun, has any intent or ability to carry out a violent act. An offender who walks into a bank waving a banana or what is plainly a toy gun, for instance, would not instill a fear of death in a reasonable person, even if the offender emphatically announced his possession of a gun. Cf. Jennings, 439 F.3d at 611 (surmising “that there could be circumstances that would sufficiently dilute the phrase T have a gun’ so that it would not qualify as a death threat,” such as where “a bank robber claimed to have a gun but brandished what was quite obviously a toy”); Gibson, 155 F.3d at 847 (stating that “I have a gun,” constitutes a threat of death unless “unusual mitigating circumstances accompanying this statement could deprive the words of their ordinary and expected meaning” (internal quotation marks omitted)). Because such circumstances would fall short of instilling a fear of death in a reasonable victim of the offense, the threat-of-death enhancement would not be warranted.[3]
The question that next arises relates to the types of contextual factors that may be taken into account when determining the likely reaction of such a reasonable victim. This evaluation is clearly an objective one. United States v. Sogan, 388 Fed.Appx. 521, 524 (6th Cir.2010) (unpublished opinion). Thus, facts such as the robber’s statements, body language and overall demeanor, tone of voice, and mode of communication are all relevant to the analysis. Moreover, despite the government’s argument to the contrary, we believe that a teller’s reasonable perceptions of an incident also play a role in the objective evaluation of whether a reasonable teller in that specific teller’s shoes would have experienced a fear of death. Cf. id. (discussing two bank tellers’ personal interpretations of the defendant’s statements and expressions of fear when analyzing whether the defendant’s conduct objectively amounted to a threat of death). As the district court appropriately recognized, an individual teller’s impression of the events in question is a relevant consideration for a court trying to determine whether the proverbial “reasonable person” would have been fearful under the same circumstances. Although the presence or absence of the teller’s fear is by no means the only factor to be considered — indeed, it cannot be dispositive or even the focus of the analysis — when viewed alongside other *577 contextual evidence, such testimony may be useful to corroborate or bolster a court’s broader evaluation of what a reasonable person’s response would have been under the same circumstances.
Our conclusion here is consistent with the considerations that we have endorsed in a related context: proof of the intimidation element of bank robbery under 18 U.S.C. § 2113(a). As is the case with U.S.S.G. § 2B8.1(b)(2)(F), the test for intimidation under § 2113(a) is objective, asking “whether an ordinary person in the teller’s position could reasonably infer a threat of bodily harm from the defendant’s acts.” United States v. Gilmore, 282 F.3d 398, 402 (6th Cir.2002). Applying that standard in a sufficiency-of-the-evidence challenge, we concluded that “[w]hile ... the test for intimidation is essentially an objective one, evidence that the teller felt threatened is probative of whether a reasonable person would have been afraid under the same circumstances.” Id. at 403 (internal quotation marks omitted). Accordingly, the teller’s fear was relevant “in assessing the intimidating nature of [the defendant’s] conduct.” Id. The same analysis applies here.
Our conclusion is also consistent with the many other circuits that have long permitted some consideration of a victim’s perceptions and state of mind in similar contexts that rely on an objective, reasonable-person standard. See, e.g., United States v. Davis, 635 F.3d 1222, 1226 (D.C.Cir.2011) (reviewing a district court’s application of the sentencing enhancement for brandishing a dangerous weapon and indicating that the victim’s perception “may be relevant to th[e] inquiry but is never controlling of the outcome” (alteration in original) (internal quotation marks omitted)); United States v. Alaboud, 347 F.3d 1293, 1298 (11th Cir.2003) (citing supporting precedent from other circuits and holding that, even though an objective standard applies to the determination whether a defendant transmitted a threat to injure another in violation of 18 U.S.C. § 875(c), testimony concerning a victim’s personal belief that the defendant’s words were a threat was “relevant in the inquiry of whether a reasonable person would perceive the statements as a threat”); United States v. Smith, 131 F.3d 685, 689 (7th Cir.1997) (evaluating jury instructions on intimidation under 18 U.S.C. § 2113(a), and concluding that “the teller’s testimony that she in fact feared bodily harm to herself or someone else in the bank if she did not comply with Smith’s demands can be considered in determining whether Smith’s actions would have produced the fear of bodily harm in a reasonable person”); United States v. Walker, 835 F.2d 983, 987 (2d Cir.1987) (noting, in the context of a forcible assault of a probation officer, that although “[t]he proper standard for determining whether the requisite degree of force was displayed ... is an objective one, ie., whether the defendant’s behavior would reasonably have inspired fear in a reasonable person ... the victim’s subjective state of mind is not irrelevant to determining whether the amount of force threatened or displayed was sufficient to make fear reasonable” (citation omitted)); United States v. Cunningham, 110 Fed.Appx. 238, 242 (3d Cir.2004) (unpublished opinion) (“Admittedly, the intimidation inquiry [under 18 U.S.C. § 2113(a) ] is objective, not subjective, focusing on whether an ordinary person in the teller’s position reasonably could infer a threat of bodily harm from the defendant’s acts. That said, asking [the teller] about her state of mind (ie., whether she was afraid) was at least minimally probative of whether a reasonable person in her position also would be afraid.” (citation and internal quotation marks omitted)), cert. denied, 543 U.S. 1130, 125 S.Ct. 1101, 160 *578 L.Ed.2d 1085 (2005); United States v. Muhammad, 64 Fed.Appx. 629, 630 (9th Cir. 2003) (unpublished opinion) (“We have consistently upheld the admission of teller testimony [concerning his subjective reaction to a defendant’s conduct] as circumstantial evidence that, when combined with other evidence like a demand note, could allow a jury to infer objective intimidation [under 18 U.S.C. § 2113(a) ].”).[4] But see Jennings, 439 F.3d at 611 (concluding that “an examination into the subjective reaction of one specific teller is ... inappropriate” because it risks “creating] a windfall for defendants who fortuitously selected to victimize a bank teller with an unusually thick skin”).
Applying these principles here, we conclude that, in spite of Wooten’s use of the phrase, “I have a gun,” the objective circumstances of the robbery do not warrant application of the threat-of-death enhancement. A number of factors support this determination. First, Mason’s description *579 of Wooten’s nonaggressive demeanor suggests that Wooten would not have appeared threatening to a reasonable observer. Wooten approached the tellers calmly, placed both hands in a visible position on the counter, and softly said that he was engaged in a robbery. Wooten’s demean- or was described as “nonthreatening,” and Wooten was not engaged in any conduct that would objectively suggest an intent to “hurt [Mason] or anyone in the bank.” R. 41 (Sentencing Hr’g Tr. at 9). Such behavior would not convey to a reasonable teller in Mason’s position that Wooten was prepared to use deadly force.
Second, the robbery did not contain any hallmarks of experienced bank robbers, such as demand notes, which may contribute to the intimidating nature of an encounter. Cf. United States v. Pacheco, 466 Fed.Appx. 517, 523 (6th Cir.2012) (unpublished opinion) (“A demand note itself, being a tool of the trade of bank robbers, is a form of intimidation.”) (quoting United States v. Smith, No. 92-6311, 1993 WL 303359, at *1 (6th Cir. Aug. 9, 1993)). Wooten wore no mask or disguise and appeared no different than an ordinary customer. By all accounts, Wooten did not assertively command that Mason hand over the money. Instead, Wooten rather amateurishly made repeated but quiet demands in an attempt to convince Mason that he was truly engaged in a robbery. Thus, these facts also support the conclusion that Wooten’s conduct was not objectively threatening.
Finally, Mason himself testified both at sentencing and in an affidavit that he never felt threatened by Wooten. Instead, Mason explained that he handed over the money because he had been trained to do so if he were ever presented with a robbery demand, not because of any perceived danger. Based on the unchallenged description of the robbery, Mason’s response does not appear to be that of an unusually fearless individual, and instead corroborates the objective descriptions of Wooten’s conduct. That a teller at a separate unsuccessful bank robbery laughed at Wooten’s prior similar attempt further supports Mason’s assessment of Wooten’s conduct and demeanor, as well as Mason’s resulting belief that he was never in harm’s way. Like Mason, that earlier teller did not discern any real threat. Thus, taken as a whole, the overall circumstances were sufficient to mitigate the force of Wooten’s assertion that he had a gun, and Wooten’s conduct falls short of warranting the threat-of-death enhancement under § 2B3.1(b)(2)(F).
III. CONCLUSION
We recognize that, in most cases, a bank teller’s recollection of the circumstances of a robbery will not be as favorable to a defendant as it is to Wooten here. Indeed, in some instances, such testimony may in fact work against a defendant seeking to avoid the two-level enhancement under § 2B3.1(b)(2)(F). Nevertheless, under the particular circumstances of this case, Mason’s reasonable perceptions, in combination with the other characteristics of Wooten’s offense conduct, objectively lead to the conclusion that a reasonable teller in Mason’s shoes would not have perceived a threat of death. Accordingly, because the district court erred in finding that Wooten had made a threat of death within the meaning of § 2B3.1(b)(2)(F), we REVERSE the district court’s imposition of the threat-of-death enhancement, VACATE Wooten’s sentence, and REMAND for resentencing in accordance with this opinion.

. There was some debate at the sentencing hearing concerning whether Wooten said "I have a gun” or "I have a weapon.” The teller reported the latter statement in an FBI interview shortly after the robbery, and repeated it in an affidavit filed with the district court. Citing employee training that advocated use of the word "weapon” rather than "gun,” and his recent review of the silent surveillance video, which purportedly jogged his memory, Mason testified at sentencing that Wooten instead said "I have a gun.” R. 41 (Sentencing Hr’g Tr. at 14, 16). The district court found Mason’s later testimony credible in spite of its inconsistency with Mason's statements in the FBI interview and affidavit. The district court therefore made a factual finding that the government had proved by the requisite preponderance of the evidence -that Wooten said “gun” rather than "weapon." Although Wooten argues otherwise, we do not believe this finding constituted clear error. The "clearly erroneous” standard is deferential, and factual findings derived from credibility determinations are entitled to particular deference in our court. Satterlee v. Wolfenbarger, 453 F.3d 362, 367 (6th Cir.2006), cert. denied, 549 U.S. 1281, 127 S.Ct. 1832, 167 L.Ed.2d 322 (2007). Where, as here, "there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous." Id. at 366-67 (internal quotation marks omitted). We therefore adopt the district court’s findings on this issue.

. In light of these precedents, we clearly do not dispute the dissent’s observation that § 2B3.1(b)(2)(F) applies equally to both express and implied threats of death. To the contrary, we fully agree that, at least in the majority of cases, a bank robber’s use of the phrase "I have a gun” is alone enough to convey an implicit threat of death that supports the enhancement. As discussed below, it is only when we are presented with other case-specific contextual factors that this conclusion may vary. Given that none of our prior cases presented any such factors, those cases do not proscribe the distinction we make today for scenarios that present both an implied threat and mitigating contextual factors in the same case.

. Not one of the cases cited by our dissenting colleague as contrary to our holding contains evidence of the type of extenuating facts that we encounter here. Instead, each would have been easily resolvable using the more limited analysis in Winbush, and thus, even under our reasoning today, none of the cited cases would have commanded a different result. Our holding is a narrow one, and it is based entirely on the unique factual circumstances presented in this case. We express no disagreement with the established law in either this circuit or our sister circuits. Instead, we merely conclude that this case qualifies as one of the rare instances in which the overall context of the robbery prevents the case from fitting the standard § 2B3.1(b)(2)(F) mold.

. Although the dissent characterizes this inquiry as "perilous” because of its potential for elevating victim testimony to a dispositive level for district courts seeking to determine whether to grant a sentencing enhancement, Dissenting Op. at 583-84, we believe this concern to be overstated. As our opinion makes clear, testimony concerning a teller's personal perceptions may be a consideration in evaluating the broader question of a reasonable teller’s response, but it cannot be the only consideration. Likewise, such testimony cannot be given undue weight. Moreover, our cases have already condoned the type of "terrified-teller testimony,” id., that, by shunning all subjective testimony, the dissent purports to avoid. See, e.g., United States v. Gilmore, 282 F.3d 398, 403 (6th Cir.2002) (permitting testimony from several tellers indicating that they personally experienced fear during a bank robbery as proof of the intimidation element under 18 U.S.C. § 2113(a), which employs a similar objective test); United States v. Sogan, 388 Fed.Appx. 521, 524 (6th Cir.2010) (unpublished opinion) (noting the tellers' subjective responses to the robbery when discussing the district court's application of the § 2B3.1(b)(2)(F) enhancement). Thus, by the dissent's reasoning, in order to ensure that all defendants are treated equally — a proposition with which we agree — a district court should, in appropriate circumstances, be able to consider testimony from tellers who exhibited a nonfearful response.
We recognize that an unpublished order in this circuit suggests the opposite conclusion. United States v. Willis, 48 Fed.Appx. 542, 543 (6th Cir.2002) (unpublished order), involved a robbery during which a robber gave a bank teller a demand note that stated: "There is a gun pointed at your head. Put the money in the bag. 20 minutes after I’m gone the guy with the gun will also leave. Try anything funny, you will be shot.” Apparently unconvinced, the teller refused to cooperate. Id. At sentencing, the defendant attempted to argue that the noncooperation demonstrated that the teller never feared for her life and that the threat-of-death enhancement therefore should not apply. We rejected that argument, and in doing so, noted that ”[t]he subjective belief or reaction of the teller to the demand note has no relevance to the [§ 2B3.1(b)(2)(F) ] analysis.” Id. We think our approach today is the better one. And because Willis was unpublished, we are not bound by its reasoning. United States v. Dial, 524 F.3d 783, 787 n. 2 (6th Cir.), cen. denied, 555 U.S. 902, 129 S.Ct. 232, 172 L.Ed.2d 177 (2008). Moreover, Willis did not confront the more compelling circumstances now present before us. Instead, Willis involved a more direct personal threat and the use of a demand note, which may reasonably indicate a more seasoned robber. Thus, even if it had been considered, the scant mitigation evidence to which the defense pointed in Willis would not have outweighed the usual impact of the defendant's threatening words.
In addition, although we believe that our approach is entirely consistent with the Sentencing Guidelines, given that there is some division between the circuits with respect to the contextual factors that may be considered when determining whether a defendant made a threat of death for purposes of § 2B3.1(b)(2)(F), we do not think that the Sentencing Commission would be remiss to provide additional clarification on this issue. Cf. Jansen v. United States, 369 F.3d 237, 250 (3d Cir.2004) (Alito, L, concurring) (requesting that the Sentencing Commission address an ambiguous Guideline provision that had been the subject of a circuit split).