**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0499n.06

Case No. 14-5979

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 13, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| ROBERT MANLEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MOORE and COOK, Circuit Judges; COHN, District Judge.[*]

COHN, District Judge. This is a criminal case. Defendant-Appellant Robert Manley ("Manley") appeals from his conviction and within-guidelines sentence of 70 months following his guilty plea to four counts of bank robbery. Manley challenges the denial of his requests for a mental evaluation and a hearing to determine his competency as well as the imposition of a two-level sentencing enhancement for a threat of death. We AFFIRM.

---

[*]The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

A.

On March 30, 2013, a grand jury indicted Manley on four counts of bank robbery, in violation of 18 U.S.C. § 2113(a). The four robberies took place over an eleven day period in December of 2012. In each robbery, Manley handed the teller a note demanding money and stating, in varying terms, that he had a bomb. Specifically, on December 20, 2012, Manley handed the teller a note which read: "I have placed 2 explosive devices outside your bank I'm armed and a friend is monitoring a police scanner No alarms or calls for 5 minutes Count out $5000 you have 15 sec." On December 24, 2012, Manley passed a note to the teller which read: "I have placed 2 lethal high explosive devices outside bank, No alarms camera, calls for 5 min. A friend is monitoring the Police Scanner. I'm Armed hand me all the 100, 50, 20 now It's all (a) good day to die." On December 27, 2012, Manley handed the teller a note which said: "Lay the 100's 50's and 20's on the counter. Don't push any alarms. Me and my friend rigged the branch with 2 high powered explosives and if you push any of the alarms my friend will blow the branch up." Finally, on December 31, 2012, Manley presented the teller a note which said: "I am armed. Have placed an explosive device. No alarms, calls, camera. A friend is monitoring a police scanner. I want all 100's, 50's, and 20's."

B.

On January 14, 2014, Manley pled guilty to all four counts. Although there was no plea agreement, the government agreed to recommend a sentence at the low end of the guidelines. At the plea hearing, the district court questioned Manley to ensure he understood his rights and that he was pleading guilty without a plea agreement. The district court also questioned Manley about his mental condition, to which he replied that he had been under psychiatric care at the VA

for a number of years, but was never diagnosed with any mental condition. The district court also confirmed that Manley understood the proceedings against him.

A few days after pleading guilty, Manley filed a pro se "Motion for Mental Evaluation," essentially contending that his struggles with addiction and depression have impacted his decisions. Counsel for Manley then filed a "Motion for a Hearing to Determine Defendant's Present Mental Condition and for an Order Directing a Psychiatric Exam." Counsel explained that such an examination was necessary to evaluate Manley's present mental condition and that such results may affect his sentence.

Shortly thereafter, Manley was granted new counsel who filed a supplement to the pending motions for a mental examination. Attached to the motion was a document from the VA that stated Manley had consulted with a minister and exhibited "spiritual injuries." Additionally, the motion listed nine separate institutions and hospitals that Manley had apparently been housed in over a 20 year period for mental problems. However, no records from these institutions were provided.

A magistrate judge, to whom the motions were referred, denied them after a hearing. The magistrate judge found that there was an insufficient basis for ordering a mental health evaluation of the defendant to determine any present need for diagnosis and treatment.

## C.

Manley's case proceeded to sentencing. The presentence report calculated Manley's guidelines range as 70 to 87 months, based on a total offense level of 25 and criminal history category of III. In arriving at Manley's offense level, the probation officer applied a two-level enhancement under U.S.S.G. §2B3.1(b)(2)(F) for a threat of death. Manley objected to the enhancement.

Manley's sentencing was held on two different dates, on June 19, 2014 and August 4, 2014. At both sentencing hearings, Manley again objected to the two-level enhancement. At both hearings, the district court considered Manley's objections and concluded that the enhancement applied. The district court found that a reasonable person who received the notes indicating the presence of a bomb and an accomplice nearby would have felt that his life was threatened.

The district court then sentenced Manley to a term of 70 months. The district court also imposed a consecutive sentence of 6 months on the pending supervised release violation.

## II.

## A.

Manley argues that he was entitled to a competency hearing or should have been referred for a mental evaluation. The determination of whether to conduct a competency hearing or order a mental evaluation is subject to abuse of discretion review. *See United States v. Ross*, 703 F.3d 856, 867 (6th Cir. 2012). Conducting a competency hearing or ordering a mental evaluation are means to ensure that a criminal defendant pleading guilty does so competently and intelligently. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993). A criminal defendant's due-process right to a fair trial is violated by a court's failure to hold a competency hearing where there is a bona-fide doubt as to a defendant's competency. *Pate v. Robinson*, 383 U.S. 375, 385–86 (1966).[1]

---

[1] The standards for competency to stand trial are codified in 18 U.S.C. § 4241, which provides:

> (a) Motion to determine competency of defendant.—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order

To be deemed competent, a defendant must have (1) a sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding, and (2) a rational and factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam); *Godinez*, 509 U.S. at 399 (stating that the *Dusky* standard applies to defendants who plead guilty). In determining whether a competency hearing is required, a district court should consider "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). No one factor is determinative of whether further inquiry into a defendant's competency is warranted, "but . . . even one of these factors standing alone, may, in some circumstances," be sufficient to warrant further inquiry. *Id.*

Here, there was no abuse of discretion in denying Manley's request for a competency hearing or mental evaluation. Although Manley contends he presented ample information indicating that he was presently suffering from a mental disease or defect, the record does not support such an assertion. The only evidence supporting an adverse mental condition is a document from the VA from 1997 which noted that Manley consulted with a minister who noted he suffered from "spiritual injuries" including guilt, anger, grief, and despair. The record does not contain any evidence that Manley was ever diagnosed with a mental condition affecting his

such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(b) Psychiatric or psychological examination and report.—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

competency. Although Manley says he has been in multiple psychiatric facilities for treatment, this fact does not call into question whether Manley had a present need for an evaluation. Nor does the record display that Manley at any time presented himself as one in need of a mental evaluation. Indeed, at his plea hearing, Manley admitted that he was able to understand the proceedings. Absent any evidence that Manley was presently suffering from a mental condition that would call into question his competency, there was no basis for ordering a competency hearing or a mental evaluation.

B.

Manley also contends that the district court erred in applying a two-level sentencing enhancement. This court reviews de novo the district court's application of the Sentencing Guidelines to a particular set of facts, including whether the facts as found warrant the sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F). *United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002); *see also United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010). The government has the burden of proving aggravating factors (enhancements) under the Sentencing Guidelines by a preponderance of the evidence. *United States v. Ledezma* 26 F.3d, 636, 644 (6th Cir. 1994).

Section 2B3.1(b)(2)(F) of the guidelines states that "if a threat of death was made, increase [the offense level] by 2 levels." To convey a threat of death, an offender must "engage[] in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." *Id*. cmt. n. 6. The guidelines also provide the following nonexhaustive list of potential death threats as examples: oral or written demand[s] using words such as "Give me the money or I will kill you," "Give me the money or I will pull the pin on the grenade I have in my pocket," "Give me the money or I will shoot you," "Give me your money or else (where the

defendant draws his hand across his throat in a slashing motion)," or "Give me the money or you are dead." *Id*. The threat of death need not be explicit; however, the communication "must be sufficient to permit a reasonable bank teller to fear that death is at least a reasonably likely result of his or her noncooperation." *United States v. Wooten*, 689 F.3d 570, 574 (6th Cir. 2012).

Manley relies on *Wooten*, *supra*, to argue that the enhancement does not apply. In *Wooten*, the majority concluded that there is no "per se rule that the statement 'I have a gun' always constitutes a threat of death." *Wooten*, 689 F.3d at 575. Rather, "contextual factors" should be taken into account to determine "the likely reaction of a reasonable victim." *Id*. at 576. The majority noted factors such as "the robber's statements, body language and overall demeanor, tone of voice, and mode of communication" as relevant as well as "a teller's reasonable perceptions of an incident." *Id*. The majority also found significant the fact that the robbery "did not contain any hallmarks of experienced bank robbers, such as demand notes, which may contribute to the intimidating behavior of an encounter. *Id*. At 579.

*Wooten* is distinguishable. First, unlike in *Wooten*, there was no testimony from a bank teller or any other witness as to Manley's demeanor which could lead to the conclusion that he was not threatening. Second, Manley employed a "hallmark[] of experienced bank robbers" in the form of demand notes that were consistent and specific in instructing the teller to hand over certain denominations of bills and informing the teller as to the presence of a bomb as well as well as the presence of an accomplice. In short, the notes communicated a specific threat if the teller did not comply.

Moreover, although Manley says that the enhancement should not apply because there was no search for a bomb after any of the robberies, this fact alone does not bear on whether any of the tellers felt threatened with death if they did not comply. In all of the notes, Manley said

that he had a bomb and threatened to use the bomb if his demand was not met. A reasonable teller could believe based on the statements in each note that that Manley had a bomb and would detonate it if his demands were not met. Such threats certainly convey a fear of death.

Overall, the district court carefully considered the circumstances and concluded that the enhancement was appropriate and fully articulated its reasons for so finding. The district court correctly concluded that the two-level enhancement for a threat of death applied. There is no error in the sentence imposed.

III.

For the reasons stated above, we AFFIRM.